UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EULA ANDERSON,                           Case No. 1:12-cv-974

       Plaintiff,                        Dlott, J.
                                         Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Eula Anderson filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in late January 2009, alleging a disability onset date of February 7, 2007, based upon a combination of physical and mental impairments. Plaintiff's applications were denied initially and upon reconsideration, and she timely requested an evidentiary hearing. In March 2011, Administrative Law Judge ("ALJ") George Gaffaney held a hearing, at which Plaintiff and her counsel appeared by videoconference. After the hearing, on July 19, 2011, ALJ Gaffaney issued a decision

that concluded that Plaintiff was not disabled. (Tr. 23-34). The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 33 years old on her alleged disability onset date, and remained in the "younger individual" age category at the time of the ALJ's decision. She has the equivalent of a high school education (through G.E.D.), and past relevant work as a patient care assistant or phlebotomist. (Tr. 33, 392, 401).

Plaintiff alleges that she is disabled due to bipolar disorder with auditory hallucinations, a history of bowel obstruction, undifferentiated connective tissue disease, fibromyalgia, antiphospolipid syndrome and Factor V Leiden.[1] In contrast to the list of impairments alleged by Plaintiff, the ALJ found that Plaintiff "has the following severe impairments: depression, anxiety, lupus, fibromyalgia, and right hip pain." (Tr. 25). The ALJ determined that none of Plaintiff's impairments or combination thereof met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a restricted range of sedentary work, as further limited:

> to only occasional stair climbing, stooping, balancing, kneeling, crouching, and crawling. In addition, she is able to tolerate only occasional changes in a routine work-setting and occasional interaction with the public. She is unable to climb ladders and she must avoid work-place hazards such as dangerous machinery and unprotected heights.

---

[1]Plaintiff cites a Mayo Clinic summary of antiphospholipid syndrome that describes the condition as an immune system disorder that can lead to the formation of blood clots. http://www.mayclinic.com/health/antiphospholipid-syndrome/DS00921, last updated April 2, 2011. Plaintiff cites the same resource to explain that Factor V Leiden is a mutation of one of the clotting factors in the blood, which mutation can increase the chance of developing abnormal blood clots. http://www.mayclinic.com/health/factor-v-leiden/DS01083, last updated September 6, 2012.

(Tr. 26). The ALJ discounted many of Plaintiff's complaints as "not wholly supportable." (Tr. 27).

Based on the testimony of a vocational expert, the ALJ determined that although Plaintiff could not return to her prior work, she could still perform the requirements of many occupations, including assembler and inspector. (Tr. 34). Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 34). In her Statement of Errors, Plaintiff argues that the ALJ erred when he: (1) failed to account for all of Plaintiff's impairments in the RFC; (2) improperly evaluated the medical opinion evidence; and (3) made an improper credibility finding.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

3

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

**1. Failure to Account for All of Plaintiff's Impairments**

Plaintiff argues that the non-disability determination is not supported by substantial evidence, because the ALJ failed to include all of Plaintiff's "severe" and "non-severe" impairments in the hypothetical RFC posed to the VE. In terms of the medical evidence in favor of a disability determination, Plaintiff focuses mostly on the psychiatric evidence involving her auditory hallucinations, and physical evidence documenting her bilateral Reynaud's Syndrome and carpel tunnel syndrome.

**a. Mental Impairments**

Plaintiff first contends that her auditory hallucinations create significant functional limitations that the ALJ failed to consider in formulating her RFC. Although Plaintiff's medical records reflect diagnoses of PTSD and bipolar disorder with psychotic features, the ALJ described only the diagnoses of depression and anxiety as "severe" impairments.

Defendant interprets Plaintiff's argument as one that the ALJ erred at step two of the sequential process by failing to recognize Plaintiff's Bipolar Disorder and/or auditory hallucinations as "severe." Defendant correctly observes that, in most cases, the failure to assess a particular impairment as "severe" will not constitute reversible error so long as the ALJ found other severe impairments, and therefore continued with the sequential analysis. *See generally Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The Defendant further correctly points out that a medical diagnosis, by itself, is not conclusive evidence of disability because it does not reflect the limitations that may result from the diagnosis. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). However, neither of these legal propositions is challenged by Plaintiff

5

here.[2] Instead, the thrust of her argument is that the ALJ failed to properly assess Plaintiff's mental limitations, some of which were the result of her auditory hallucinations. The fact that the ALJ failed to discuss the underlying diagnoses that caused those auditory hallucinations, or failed to recognize the hallucinations as a separate "severe" impairment at Step 2, is merely a broken link in the chain, as opposed to the larger and more critical gap in the analysis for which Plaintiff seeks remand.

In considering the scope and severity of the sum of Plaintiff's mental impairments, the ALJ found moderate limitations in social functioning and in concentration, persistence or pace, and one or two episodes of decompensation of extended duration, but only mild limitation in her activities of daily living. (Tr. 25). The ALJ's findings mostly mirror the opinions of non-examining consulting psychologist Cindy Matyi, Ph.D., to whose opinions the ALJ attached "significant" and "substantial" weight. (Tr. 25, 29). In contrast to the ALJ, however, Dr. Matyi more clearly identified Plaintiff's mental impairments as stemming from, in part, her Bipolar I diagnosis.[3]

In determining the impact of Plaintiff's mental impairment on her work abilities, the ALJ concluded that Plaintiff would be "able to tolerate only occasional changes in a routine work-setting and occasional interaction with the public." He included no RFC limitations whatsoever concerning concentration, persistence or pace, despite finding "moderate" limitations in those areas. The ALJ explained:

> Although the claimant alleged substantial limitation in her ability to concentrate and sustain attention, she reported engaging in activities consistent with an ability to sustain simple routine tasks.

---

[2] Plaintiff stresses this point in her reply memorandum. (Doc. 21 at 2).
[3] The ALJ did not adopt Dr. Matyi's assessment of Plaintiff's limitations in activities of daily living as "moderate," instead finding her limitations to be only "mild" in that area. No explanation was provided for that discrepancy.

6

- The claimant alleged loss of concentration, difficulty focusing, short attention span, and a tendency to leap from one activity to the next rather than staying on task. (11e, 2e).  She elaborated that her attention span is about 15 minutes long (2e), that it is hard to drive (11e), and that it is difficult to follow instructions (11e).  She clarified that she forgets where she is going or how to get there (12f/5-6) and that voices in her head distract her (2e) and make it difficult to concentrate (12f/5-6).  The claimant reported that her inability to concentrate and sustain focus precludes reading (2e & 8c).  She specified that, although she enjoys reading, the voices in her head make it difficult to concentrate (12f/5-6).

- However, a medical note indicated that the claimant reported that she was able to focus on reading (13f/31).  Further, the claimant reported that she handles her own money (2e), listens to music (2e), likes to watch the news (2e), and performs a number of household chores, including preparing microwavable foods (12f/5-6), dusting (2e), sweeping (2e), doing the laundry (2e) and wiping off counters (2e).  She disclosed that she takes care of her children (11f/18), that she takes her children to and from school at times (2e), and that sometimes she goes to the grocery store (2e).

(Tr. 27).

The ALJ acknowledged that treatment notes "chronicle complaints related to affective disorder, with hallucinations and anxiety," but deemed clinical mental status findings to be consistent with the mental RFC that he had determined. (Tr. 30).  With respect to Plaintiff's auditory hallucinations in particular, the ALJ noted that "medication appears to have helped with the claimant's auditory hallucinations by causing them to become a little softer…and to take on a chattering quality in which it became difficult at times even to understand what they are saying….The claimant disclosed that her therapist was helping her with this." (Tr. 30).  While there is some support for the ALJ's determination that Plaintiff's therapy and drug treatment were beneficial, the record does not support his conclusion that the auditory hallucinations impose no work-related limitations whatsoever, or that the only accommodation required would be limiting

changes in work routine or contact with the public rather than, at a minimum, limitations in the areas of concentration, persistence and pace.

As even the ALJ acknowledges, Plaintiff's auditory hallucinations never subsided entirely.  Plaintiff points to record evidence that periods of improvement have been short-lived.  (*Compare* Tr. 707, Tr. 711, and Tr. 816-817 with Tr. 694 and Tr. 705; *see also* Tr. 675-676, 681, noting difficulties with focus and concentration).  The hallucinations contributed to two psychiatric hospitalizations, which factored into the ALJ's finding of "one or two episodes of decompensation of extended duration."  (Tr. 25, *see also, e.g.,* Tr. 291, 298, 301-304, 886-892).  Moreover, treating, examining and reviewing medical sources agreed (as did the ALJ), that Plaintiff's mental impairment caused her to have "moderate" limitations in concentration, persistence and pace.  (*See, e.g.* Tr. 728 and Tr. 731, mental consulting examination documenting observation of Plaintiff's "trouble organizing her thoughts and …slow in processing.").  Even agency reviewers completing "Report of Contact" forms concluded that Plaintiff "should not be expected to adhere to strict time limits or production standards" based upon her severe mental impairments.  (Tr. 192, 210).

A limitation on changes in routine work setting simply is not equivalent to limitations in persistence and concentration, or an inability to work at a fast pace.  For the same reason, a limitation on Plaintiff's contact with the public is insufficient to encompass limitations caused by her auditory hallucinations.  A failure to include all relevant mental limitations will render vocational expert testimony insufficient to uphold a non-disability finding.  *See generally Ealy v. Com'r*, 594 F.3d 504, 516 (6th Cir. 2010)(where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, ALJ's

8

"streamlined" hypothetical omitting those restrictions was insufficient); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-931 (E.D. Mich. 2005)(hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace). The representative jobs to which the VE testified in this case, assembler and inspector, arguably could require a level of concentration, persistence and pace in excess of Plaintiff's capabilities. *Accord id.*, 383 F.Supp.2d at 931 (noting that job of packer "seems to require a degree of sustained degree of concentration, persistence and pace."). Therefore, remand is required for further consideration of the impact of Plaintiff's Bipolar Disorder and/or auditory hallucinations upon her ability to work, with particular attention to Plaintiff's limitations in the areas of concentration, persistence and pace.

### b. Physical Impairments

While remand is clearly required for additional consideration of Plaintiff's mental impairment, Plaintiff argues that the ALJ additionally erred by failing to properly accommodate her bilateral Reynaud's Syndrome and bilateral carpal tunnel syndrome. Neither impairment was deemed to be "severe" by the ALJ. The ALJ discounted any complaint of "right hand tremor," on grounds that the treatment notes did not support "any limitations related to hand tremor." (Tr. 25). He cited a June 2009 report from Dr. Fritzhand that reported Plaintiff's grasp strength and manipulative abilities were "well-preserved bilaterally." (Tr. 29, 397-404).[4] In addition, in June 2010, Plaintiff's treating physician, Dr. Luggen, opined that Plaintiff had no significant limitations in repetitive reaching, handling, or fingering. (Tr. 739).

---

[4]The ALJ also cited a normal hand x-ray record dated December 2008. However, a hand x-ray arguably is not relevant to carpal tunnel syndrome or Reynaud's Syndrome.

9

Plaintiff points to various records, and to her own testimony, as alleged support for a claim that circulatory problems with her hands cause her to occasionally lose sensation in some fingers, making it difficult for her to use her hands to open things, write, or fasten her clothing. However, the referenced records – at best -- provide minimal support for that contention. Plaintiff's hearing testimony attributed such problems not to carpal tunnel or Reynaud's, but to an alleged right-hand tremor for which the ALJ found no support, a finding that Plaintiff does not contest. (*See* Tr. 59-60; *see also medical records at* Tr. 241-244 (carpal tunnel symptoms recorded in 2002), 376, 744, 746, 791). Plaintiff states that she has a history of dropping objects on her feet, resulting in broken toes. She asserts that history supports her allegation of hand limitations, but the cited records fail to support that inferential leap. Instead, the records reflect that on separate occasions Plaintiff dropped a fire extinguisher and bowling ball on her foot (both in March 2007), and on a third occasion dropped a couch on her foot (August 2007). (See, e.g., Tr. 349, 362, 365, 527-531, 544-545). The records do not suggest any particular reason for the 2007 accidents; obviously, myriad reasons unrelated to a hand impairment could cause someone to drop a couch or a bowling ball. No further evidence of "dropping objects" occurred after 2007.

Plaintiff offers no evidence to contradict the only two medical opinions regarding functional limitations that are in the record, including her own treating physician's opinion that she has no limitations in reaching, handling or fingering. Defendant argues persuasively that this opinion evidence provides "substantial evidence" for the ALJ's conclusion that no functional limitations were required to be included in order to accommodate Plaintiff's alleged carpal tunnel syndrome and/or her Reynaud's Syndrome.

10

### 2. Failure to Properly Weigh Medical Opinions

Plaintiff's second assertion of error claims that the ALJ erred by giving the least weight to the opinion of Plaintiff's treating psychiatrist (Dr. Anaya), with the most weight given to a reviewing, non-examining psychologist (Dr. Matyi), and to her primary care physician (Dr. Luggen), concerning Plaintiff's mental RFC.  Plaintiff argues that the ALJ should have accepted as "controlling" Dr. Anaya's opinions concerning the severity of her mental impairments over other opinions in the record.  She also argues that the ALJ should have credited the opinion of an examining psychologist concerning an alleged memory impairment.  Last, Plaintiff argues that the ALJ should have accepted the opinions of both her psychiatrist and her treating primary care physician regarding her expected rate of absenteeism.

In terms of evaluating the opinions of treating physicians, the relevant regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ

to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 375-376 (6th Cir. 2013).

In this case, Plaintiff had two treating physicians who rendered opinions that were rejected in part or in whole by the ALJ: her psychiatrist, Dr. Anaya, and a primary care physician, Dr. Luggen. Dr. Anaya opined that Plaintiff would be unable to meet competitive standards in her ability to remember work-like procedures, complete a normal workday or workweek, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, deal with normal work stress, or travel in an unfamiliar place. Dr. Anaya also opined that Plaintiff has no ability to use public transportation, due to symptoms from a prior attack on a bus. Last, Dr. Anaya opined that Plaintiff would be absent from work more than four days per month; Dr. Luggen agreed that Plaintiff would be absent from work, but assessed that absenteeism rate at only two days per month. The ALJ rejected all of the above opinions, as well as the opinion of a consulting psychologist relating to Plaintiff's alleged memory impairment.

Despite the presumptive weight given to the opinions of a treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). An ALJ must give "good reasons" for rejecting the opinion of a treating physician. *Id.*; *see also* 20 C.F.R. §404.1527(c)(2)("We will always give good reasons…for the weight we give your

treating source's opinion."). In cases in which the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must consider additional factors to determine how much weight should be afforded to the opinion. The same factors are reviewed in evaluating all other medical source opinions, and include: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406.

Evaluating the medical source opinions in this case, the ALJ held that the opinions of Dr. Anaya were entitled to "little weight." The ALJ succinctly stated that Dr. Anaya's opinion regarding Plaintiff's level of absenteeism and her multiple opinions regarding Plaintiff's inability to meet competitive mental standards were "contradicted by information in the mental health treatment notes." (Tr. 29). The ALJ also gave only "modest weight" to the opinion of consulting mental health examiner Mr. Seifert that Plaintiff is moderately limited in her ability to maintain attention in the performance of simple routine tasks, as "not supported by the information in the treating source mental health notes." (Tr. 29).[5] Although the ALJ assigned "substantial weight" to nearly all of the opinions of treating primary care physician Dr. Luggen regarding Plaintiff's physical RFC, and the same weight to the opinions of non-examining consultant Dr. Fritzhand as "consistent with treating source records," (Tr. 30), he carved out an exception for Dr.

---

[5]The ALJ identifies the consultant as "Dr." Seifert. Mr. Seifert's credentials reflect advanced psychological training consisting of a Master of Science in Education, not a doctorate. (Tr. 395). The ALJ's rejection of the referenced portion of Mr. Seifert's opinion also conflicts somewhat with the ALJ's own conclusion (supported by all medical source opinions) that Plaintiff has moderate limitations in concentration, persistence and pace. The ALJ did not address Mr. Seifert's additional opinions that Plaintiff has moderate limitations in her ability to withstand the stress of work activity, or that she would require assistance in managing funds if awarded benefits.

Luggen's opinion on Plaintiff's expected absenteeism. (Tr. 30). Plaintiff's argument boils down to whether or not the reasons provided for the ALJ's rejection of the referenced opinions was sufficient, and correspondingly, whether substantial evidence supports the ALJ's findings concerning Plaintiff's level of absenteeism, her abilities in the areas of concentration persistence and pace, and her memory.

### a. Opinions on Absenteeism

Plaintiff first argues that the ALJ erred by rejecting the portion of Dr. Luggen's opinion in which he indicated that Plaintiff could be expected to miss two days of work per month. In addition to Dr. Luggen's opinion regarding Plaintiff's anticipated level of absenteeism, Plaintiff's mental health providers reported that Plaintiff's physical impairments adversely affected her attendance, insofar as she occasionally missed appointments due to physical illness. (Tr. 676). Plaintiff's treating psychiatrist, Dr. Anaya, and her therapist, Ms. Huston, also jointly opined that Plaintiff was "unable to meet competitive standards" in completing a normal workday and work-week without interruption from psychologically based symptoms. Dr. Anaya specifically opined that Plaintiff was likely to miss four or more days of work per month, at least as of her condition on October 6, 2009. (Tr. 553).

Having reviewed the relevant records, the undersigned concludes that the ALJ's conclusory reasoning and findings on this issue cannot be affirmed as supported by substantial evidence. There appear to be no conflicting medical source opinions in the record regarding Plaintiff's level of absenteeism, and the ALJ's carved-out rejection of Dr. Luggen's opinion on this issue is particularly troubling, in light of the fact that virtually all other opinions held by Dr. Luggen were adopted. The rationale for rejecting the absenteeism opinion simply is not clear enough for this Court to determine its basis, and

does not constitute "good reasons" for rejecting both treating physicians' opinions on this important issue.

Although the ALJ discusses in various portions of his opinion the times in which Plaintiff's mental and physical conditions have shown brief periods of improvement, even the ALJ acknowledges that Plaintiff's conditions[6] are of the variety that are susceptible to serious and intermittent flare-ups in symptoms. The relative frequency with which severe symptoms are documented in the records underscores the ALJ's wholesale dismissal of treating physician opinions on her expected rate of absenteeism.[7] *See Gayheart v. Com'r of Soc. Sec.,* 710 F.3d at 377-378 (reversing in part because ALJ relied on examples of plaintiff's activity level out of context; activities were not inconsistent with opinions of treating psychiatrist, because "the record does not suggest..that Gayheart could do any of these activities on a *sustained* basis, which is how the functional limitations of mental impairments are to be assessed.")(emphasis original); *See also generally Miksell v. Com'r of Soc. Sec.*, 2008 WL 495604 at *10 (S.D. Ohio Feb. 21, 2008)(ability to occasionally shop, drive, or perform housework not inconsistent with opinion that plaintiff would miss more than 4 days per month due to alleged bipolar disorder and/or PTSD). While cases exist in which even a one-sentence rejection of a medical source opinion can suffice based on judicial review of the record, this is not one of them. *Contrast Allen v. Com'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir.

---

[6]For example, Plaintiff's physical conditions include arthralgia, connective tissue disease related to lupus, fibromyalgia, and hip bursitis. As the ALJ acknowledges, a number of records document episodic flare-ups of Plaintiff's symptoms from these particular diseases. (Tr. 32). Yet, the ALJ seems to have discounted the times when Plaintiff has experienced more symptoms in favor of a finding that Plaintiff has few ongoing limitations, simply based on those periods of time in which her symptoms were more manageable. (*Id.*). The explanation provided for this conclusion is too limited for this Court to affirm it on the record presented.
[7]Plaintiff reported she was previously forced to resign a prior job due to poor attendance. (Tr. 675, *see also* Tr. 728, documenting frequent absenteeism).

2009)(affirming after concluding that ALJ's one-sentence rejection of treating physician's opinion satisfied the "good reasons" requirement).

### b. Opinions Relating to Concentration, Persistence and Pace

Dr. Luggen also opined that Plaintiff's pain and other symptoms would "frequently" interfere with her attention and concentration. (Tr. 30, Tr. 736). Consulting examiner Mr. Seifert similarly opined that Plaintiff would have moderate impairment in maintaining attention for the performance of even simple, routine tasks, and moderate impairments in the ability to follow instructions, to socialize with others, and to withstand the stress and pressure of day-to-day work. (Tr. 395, 731). And of course, Plaintiff's treating psychiatrist believed her functional work abilities to be significantly impaired. Dr. Anaya and Plaintiff's therapist jointly opined that Plaintiff had "marked" functional limitations in maintaining concentration, persistence or pace. (Tr. 552). Remand for further consideration of Plaintiff's work-related limitations in concentration, persistence and pace in the context of Plaintiff's bipolar disorder and auditory hallucinations is already required, as discussed above. The ALJ's rationale for rejecting Dr. Luggen's and Mr. Seifert's related opinions only adds to that conclusion.

For example, with respect to Plaintiff's ability to concentrate, the ALJ noted records of times of improvement, emphasizing one note in May 2009 in which Plaintiff reported being able to focus on reading. (Tr. 707). However, that May 2009 note appears to record no more than temporary improvement, if that.[8] Later notes confirm that Plaintiff's mental health improvement was neither sustained nor linear in any chronological sense. The following month in June 2009, the severity of her symptoms

---

[8] The same record records an increase in Plaintiff's symptoms of depression.

increased. (Tr. 705). Symptoms decreased again in July (Tr. 701-704), but increased in August, 2009. (Tr. 694-695). Thus, remand is required for further analysis of this issue.

### c.  Opinions Relating to Memory

The last area of the ALJ's evaluation of medical opinion with which Plaintiff finds fault concerns the ALJ's finding that Plaintiff's memory was "normal," based upon two emergency room records summarily reporting "normal" memory. (Tr. 302, 503). Plaintiff complains that the ALJ should not have given so much weight to such brief notations in two emergency room records, because neither contains any reference to objective memory testing. Plaintiff directs the court's attention to findings made by a consulting psychologist who actually tested Plaintiff's memory. In June 2009 and again in January 2010, Mr. Seifert conducted examinations that revealed memory deficits that worsened over time. Following his 2010 exam, Mr. Seifert concluded that Plaintiff had "a deficit in immediate auditory recall and a significant deficit in short-term auditory recall." (Tr. 393, 730). Plaintiff relies on Mr. Seifert's conclusions to argue that the ALJ's analysis of the medical evidence is not supported by the record. As this issue may relate to Plaintiff's work-related mental limitations, additional review is warranted.

### 3. Credibility Finding

An ALJ's findings about the credibility of a witness are generally given great weight and deference, because the ALJ alone has the opportunity to observe the demeanor of the witness. "Nevertheless, an ALJ's assessment of Plaintiff's credibility must be supported by substantial evidence." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ determined that Plaintiff's allegations of disabling

symptoms were not fully credible, pointing to such evidence of her activity level as well as her ability to assist in the care and transportation of her children.[9]

Plaintiff complains that the ALJ's credibility assessment is not supported by substantial evidence. She argues that the ALJ "picked and chose" among selective records in an attempt to create "inconsistencies" between Plaintiff's allegations and the degree to which her impairments preclude her from sustained competitive work. Plaintiff contends that neither her occasional and limited activities, such as the ability to socialize with close friends and family members, nor her clinical records as a whole, support the ALJ's credibility assessment. If the ALJ's finding on credibility were the only error asserted, the issue would be closer and might not require remand.[10] However, because credibility is closely tied to other issues that more clearly require further review, the balance tips in favor of re-evaluation of this issue as well.

### III. Conclusion and Recommendation

Plaintiff does not seek a direct award of benefits from this Court, but instead seeks only remand for further review. The undersigned agrees that remand for further consideration of the record is required. Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED** and remanded to the Commissioner for further review under sentence four of 42 U.S.C. §405(g), in accordance with this Report and Recommendation. As no other matters remain pending, this case should be **CLOSED**.

                                                       */s Stephanie K. Bowman*
                                                      Stephanie K. Bowman
                                                      United States Magistrate Judge

---

[9]Plaintiff testified that two minor children, ages 8 and 16, remain at home, and that one receives social security benefits for mild mental retardation. (Tr. 47, 71). She also reported that an adult son lives with her when not away at college and provides significant household help. (*See* Tr. 209).
[10]In addition to activities expressly noted by the ALJ, the records reflect that in 2010, Plaintiff reported a flare-up of physical symptoms to her physician after "bailing hay." (Tr. 782). She also reported to her therapist that she took her daughter on a six-day trip to Disney.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| EULA ANDERSON, | Case No. 1:12-cv-974 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).